```
IN THE UNITED STATES DISTRICT COURT
  FOR THE NORTHERN DISTRICT OF ALABAMA
              MIDDLE DIVISION
```

```
JOYCE LEE,                      )
                                )
     Plaintiff,                 )
                                )
v.                              )   Civil Action No.
                                )
                                )   98-AR-1674-M
                                )
TYSON FOODS, INC.,              )
                                )
     Defendant.                 )
```

FILED
00 JAN 27 AM 9:58
U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED
JAN 27 2000

### MEMORANDUM OPINION

Presently before the court is defendant's motion for summary judgment. Plaintiff, Joyce Lee ("Lee"), alleges that defendant, Tyson Foods ("Tyson"), violated Title VII and the ADEA when it terminated her on the basis of her sex and/or her age and when it retaliated against her for complaining of sex and age discrimination. Tyson seeks summary judgment as to all counts of Lee's complaint. For the reasons set forth in the opinion below, Tyson's motion is due to be denied in part and granted in part.

### Pertinent Material Facts

Lee worked for Tyson for over 21 years[1]. By August of 1997, she was the Albertville plant accounting office manager. As accounting office manager, she supervised the receptionist, Anita

---

[1] Tyson Foods was formerly Hudson Foods. Tyson Foods purchased Hudson Foods at some point in September of 1997.



Chaffin, and three accounting clerks: Clara Davis ("Davis"), Paige Palmer ("Palmer"), and Robin Smith ("Smith").  On August 26, 1997, Tyler Bean ("Bean"), who was the controller and Lee's immediate supervisor, called Lee into his office.  Bean told her that he had received complaints from some of the employees under her supervision and that as a result, the employees she normally supervised would report directly to him instead of to her.  Lee was surprised and became very upset.  She suggested that Bean have a meeting with her and the employees to straighten everything out.  Bean declined to set up a meeting.  Later that day, Lee met with Gerald Randolph ("Randolph"), who was plant manager and Bean's supervisor.  She told him that she was very upset and that she wanted the opportunity to find out what her employees had said.  Randolph told her that he was going to stay out of it and let Bean handle the situation.

After talking with Bean and Randolph, Lee asked two of the employees, Smith and Davis, if they were happy with her supervision.  Both of them replied that they had no problems.  That night, Lee called Dennis Doty ("Doty"), corporate controller.  Lee had worked for Doty for ten years and wanted his advice.  Lee told Doty that she thought Bean was taking away her duties in order to give her job to Mark King.  Lee also called Steve Shaw ("Shaw"),

her former supervisor, for advice.

On August 27, 1999, Lee arrived at work early in order to speak with Palmer, the other accounting clerk under her supervision. According to Lee, Palmer indicated that she was satisfied with her job and had no complaints regarding Lee's supervision.

After this conversation, Lee emptied her desk. She put her belongings in a box and carried them out to her car. Lee claims that she did this because she feared she was about to be fired. Lee met with Randolph later that morning. At the time of the meeting, Randolph did not know that Lee had cleaned out her desk. Randolph told Lee that he was upset with her for calling Doty and Shaw. He told her that he did not appreciate her going over his and Tyler's heads and also told her that Doty and Shaw, being outside the chain of command, could not help her anyway. Lee told him that she called Doty and Shaw because she feared that her job was in jeopardy. Lee told Randolph that she had spoken to Davis, Smith, and Palmer, and they did not confirm Bean's allegation that they had complained about her supervision. Randolph's <u>exact</u> words in response are in dispute. In her letter to the EEOC, Lee claimed that Randolph told her that he did not appreciate her calling everyone, and that he stated, "[T]herefore, I am going to have to

ask you for your resignation." (Letter from Lee to Brooks, EEOC Investigator, of 1/27/98 at 2.) In her deposition, Lee testified that Randolph said that he did not agree with the way she was handling the situation and that she "might as well turn in her resignation." (Lee Depo. at 71.) Randolph testified at his deposition that he said something to the effect of, "If you are going to handle things this way, you might as well resign." (Randolph Depo. at 45)(referencing Memo from Bean to Personnel of 9/8/97 at 1.) After Randolph made the resignation comment, Lee stood up and left his office.

When Lee returned to her office, she saw a note asking her to call Bean. She called Bean who told her that he was very upset that she had called Doty and Shaw. Lee told Bean that Smith, Davis, and Palmer all indicated that they had not complained to him. Lee reiterated that a meeting of all of the parties could help resolve the situation. Bean told Lee that he did not have time for a meeting or to discuss the situation any further. Lee claims that at this point, she told Bean that if he did not have time to discuss this with her and to try to get a fair end to it, then more power to him. (Letter from Lee to Brooks of 1/27/98 at 3.) Lee claims that she then said goodbye and softly hung up the phone. Id. Bean wrote in a memo to the personnel file that Lee

told him, "Well, Tyler, if you don't have time for me then I don't have any more time for you. Good Bye [sic], I'm out of here." (Memo from Bean to Personnel of 9/8/97 at 1.)

After the conversation with Bean, Lee picked up her purse and left the building. Later that day, after being informed that Lee had cleaned out her desk and after receiving reports that Lee said she was quitting, Bean prepared a separation notice stating that Lee had quit without notice. At no point afterwards did Lee return to work. It is disputed exactly who took over Lee's duties after she left. Tyson argues that it did not fill her position, and that most of her duties were picked up by Smith, the accounting clerk. Lee claims that Mark King, a 22 year-old male, took over many of her duties and that Bean took over her duty of supervising the accounting clerks. Tyson does admit that some parts of Lee's duties which more directly related to cost accounting were, in fact, passed to King.

### Summary Judgment Standard

Rule 56(c), F.R.Civ.P. provides that summary judgment shall be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The

Supreme Court has emphasized that this language means exactly what it says: there must be a genuine issue of material fact, not merely some factual dispute.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248, 106 S.Ct. 2505, 2510 (1986). What this standard means in practice is that "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249, 106 S.Ct. at 2511 (citing First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 88 S.Ct. 1575 (1968)).

On defendant's motion for summary judgment, the court must look at the evidence, construed in plaintiff's favor, to see if a reasonable jury could return a verdict for plaintiff.  If so, defendants' motion for summary judgment must be denied.  If, however, as a matter of law, a jury could not return a verdict for plaintiff, defendant's motion must be granted.

### Age and Sex Discrimination Claims

The court must give the non-movant the benefit of the doubt for summary judgment purposes, and resolve all reasonable factual disputes in her favor.  At this stage, the court is not allowed to make credibility determinations.  As the court points out in the fact section above, there are disputed issues of material fact with regard to whether Lee resigned or whether she was fired, and with

6

regard to who "replaced" her. Furthermore, there are disputed issues of material fact with regard to Tyson's articulated legitimate, non-discriminatory reason(s) for firing Lee (if she was in fact fired). If Tyson is arguing that Lee was insubordinate when she talked to Davis, Smith, and Palmer, this court finds that there is a factual dispute as to whether Bean specifically instructed Lee not to talk to them. Tyson claims that after her conversation with Bean on August 26, 1997, Lee understood that she was not to talk with any of the employees who had allegedly complained about her supervision. However, a careful reading of her deposition reveals <u>at most</u> that Lee understood only that Bean would not allow a meeting with all of them together. <u>See</u> Lee's Depo. at 60, 61 and 64. Therefore, a reasonable jury could disbelieve Tyson's claim that Lee engaged in "insubordination."

Tyson also contends that even if Randolph's actions amounted to termination, he was justified because Lee went over his head to complain about the situation. First, the court points out that there was no written rule or policy that any such matter be handled internally, although Randolph testified that it was an "accepted business practice" which Lee should have known. Second, the court notes that Doty was in fact corporate controller, and Tyson admits that Bean at least had "dotted line" reporting responsibility to

7

Doty. Thus, a jury could find that Lee did not engage in improper or insubordinate behavior when she discussed the situation with Doty, and, therefore, a jury could disbelieve Tyson's articulated reason for Lee's alleged termination. Because there are factual disputes with regard to both of Tyson's articulated legitimate, non-discriminatory reasons for Lee's alleged termination, the court will deny Tyson's motion for summary judgment as to Lee's age and sex discrimination claims.

However, the court rejects Lee's argument that Tyson is collaterally estopped from asserting that she voluntarily resigned because the Alabama Department of Industrial Relations determined, in an unemployment benefits hearing, that Lee did not voluntarily separate her employment. In _Kremer v. Chemical Constr. Corp._, 456 U.S. 461, 102 S.Ct. 1883 (1982), the Supreme Court noted:

> Since it is settled that decisions by the EEOC do not preclude a trial de novo in federal court, it is clear that unreviewed administrative determinations by state agencies also should not preclude such review even if such a decision were to be afforded preclusive effect in a State's own courts.

_Kremer_ at 470, 1892 n.7. _See also_ _Mitchell v. Bendix Corp._, 603 F.Supp. 920 (N.D. Ind. 1985). More recently, the Supreme Court stated, "On the basis of our analysis in _Kremer_ . . . of the language and legislative history of Title VII, we conclude that .

8

. . Congress did not intend unreviewed state administrative proceedings to have preclusive effect on Title VII claims." University of Tennessee v. Elliott, 478 U.S. 788, 796, 106 S.Ct. 3220, 3225 (1986). See also Astoria Fed. Sav. and Loan Ass'n v. Solimino, 501 U.S. 104, 110-111, 111 S.Ct. 2166, 2171 (1991) (holding same under the ADEA).

Thus, Lee cannot rely upon any preclusive effect given to a state administrative agency's decision by the Alabama Supreme Court, because the Alabama Department of Industrial Relations' decision in this case was never reviewed by an Alabama court. In light of Supreme Court authority, this court is not bound by the Department's determination that Lee did not voluntarily resign, and the court's denial of summary judgment as to Lee's discrimination claims is based solely on disputed issues of material fact.[2]

### Retaliation Claims

Tyson's motion for summary judgment is due to be granted as to Lee's claims of retaliation under Title VII and the ADEA. In order

---

[2] It is even more unlikely here that the Department's decision would have preclusive effect because the state agency at issue was not acting as the state analog to the EEOC. The cases dealing with whether a state agency's decision has preclusive effect in a federal discrimination case involve state agencies acting as state versions of the EEOC and hearing the same discrimination claims that subsequently are filed in federal court. In contrast, here, the state agency was dealing with unemployment benefits only, not plaintiff's discrimination claims.

to establish a prima facie case of retaliation, Lee must show that: (1) she engaged in statutorily protected activity; (2) she suffered an adverse employment action; and (3) a causal connection between the protected activity and the adverse action. See Taylor v. Runyon, 175 F.3d 861, 868 (11th Cir. 1999)(citation omitted). Here, Lee cannot succeed because she has not shown and apparently cannot show that she engaged in protected activity. Lee argues that she engaged in protected activity because in her conversation with Doty, she indicated that she thought she was being discriminated against on the basis of age and sex. However, Lee admits that during that conversation, she simply told Doty that she thought Bean was going to give her job to Mark King. (Lee Depo. at 57.) She admits that she did not specifically say anything to Doty that she considered to be a complaint of age or sex discrimination. Id. Instead, Lee says that "Dennis did know Mark's age and sex, so he, you know, I assumed he was a smart enough man to know what I meant." Id.

The court finds that despite Lee's belief that Doty was smart enough to "know" what she meant, her statement does not constitute protected activity. Therefore, Lee's retaliation claims must fail.

## Conclusion

A separate and appropriate order will be entered.

DONE this 27th day of January, 2000.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE